Alan Himmelfarb (Cal. Bar. No. 90480)
KAMBEREDELSON, LLP
2757 Leonis Blvd.
Los Angeles, CA 90058
(323) 585-8696
ahimmelfarb@kamberedelson.com

*Counsel for Plaintiff*
[additional counsel appear on signature page]

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

MICHAEL MALCOLM, an individual, on his own behalf and on behalf of all others similarly situated,

    Plaintiff,

v.

JPMORGAN CHASE BANK, N.A.

    Defendant.

No. C09 04496

**CLASS ACTION COMPLAINT AND JURY DEMAND**

Michael Malcolm ("Malcolm" or "Plaintiff"), for his complaint, alleges as follows upon information and belief, based upon, *inter alia*, investigation conducted by his attorneys, except as to those allegations pertaining to Plaintiff and his counsel personally, which are alleged upon personal knowledge:

**Introduction**

1. This case is about Defendant JPMorgan Chase Bank, N.A.'s ("Chase") illegal account suspensions and reduction of credit limits on home equity lines of credit ("HELOCs") across the country. In an attempt to limit its exposure to generally declining values in the United States housing market, Chase has violated the Truth in Lending Act and its implementing regulation, Regulation Z, and has broken its contractual promises to its HELOC account holders (collectively "Class members") by using credit limit reduction standards and triggering events contrary to federal regulations, by suspending accounts and reducing credit limits without first reasonably assessing the value of each affected property, and by failing to provide adequate notice of such actions to its customers. As a result, Chase has collectively denied its customers access to

hundreds of millions of dollars worth of credit at a critical economic time.

2. Each member of the Class had a HELOC for which Chase reduced the available credit or suspended the accounts in a manner that was both illegal and unfair. As a result of Defendant's wrongful actions, Plaintiff Malcolm brings this class action on behalf of himself and the putative class and sub class for actual damages and attorneys fees under Regulation Z of the Truth-in-Lending Act ("TILA") (15 U.S.C. § 1640(a); 12 C.F.R. § 226.5(b)), equitable and injunctive remedies under California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200 *et. seq.*) and damages for breach of contract.

**Nature of the Claim**

3. As recently as July or August 2009, Chase sent a form letter to thousands of its HELOC customers, including Plaintiff and the other class members, summarily lowering their lines of credit. The letter stated:

> With home values falling in many parts of the country, we've used a proven valuation method to estimate your home's value at [insert amount]. Unfortunately, that valuation no longer supports the full amount of your Line of Credit, so we are suspending future draws against your account as of [insert date].

(*See* "Important Information about your Home Equity Line of Credit" received by Plaintiff, a true and accurate copy of which is attached as an Exhibit A.)

4. The letter does not disclose the initial value of the property, the amount by which the property has supposedly decreased, or the methodology used to compute the decline in home value or other figures. Rather, on a second page for "Frequently Asked Questions" the letter states:

> Q: Why did Chase take this action at this time?
> A: We are doing everything we can to keep homeowners from owing more than their home is worth, especially as home values in many areas of the country are falling. Your property's value no longer supports your full Home Equity Line of Credit.
> ...
> Q: How did you get the new value for my home? I have not met with an appraiser from Chase.
> A: We used an industry standard method to value your property that did not require an appraiser to enter your home. We have confidence that our valuation for your property is accurate....

(*See* Ex. A.)

5. Chase lacked a sound factual basis for sending these letters and reducing credit limits or freezing its customers' HELOCs. Defendant knowingly and intentionally used faulty and dubious automated formulas, with unreliable and inaccurate analyses, data, equations, and processes that are vulnerable to manipulation, including but not limited to faulty Automated Valuation Models ("AVMs"), to unreasonably undervalue homes so as to falsely trigger Chase's right to freeze accounts or lower credit limits. Furthermore, Chase intentionally ignored Regulation Z's definition of significant decline in value and instead used its own triggering events to purportedly gain the right to freeze HELOC accounts or reduce credit limits. As a result, Chase, in violation of federal law, reduced the credit limits and/or froze the HELOCs of many homeowners, including Plaintiff, whose property values had not declined significantly, if at all.

6. While federal law permits lenders to reduce credit limits or suspend accounts if an individual property securing a HELOC significantly declines in value, it is unlawful to reduce the credit limits or suspend HELOC accounts without first assessing the value of the collateral that secures each affected HELOC account or having a sound factual basis for the suspension or reduction. It is also unlawful to use triggering events (i.e., circumstances defined under Regulation Z the occurrence of which allows lenders to reduce credit limits or suspend HELOC accounts) not provided for by Regulation Z. As a result, Chase's intentional and systematic freezing of accounts and mass reduction of credit limits based on unreasonably faulty AVMs, and its intentional and systematic concealment of its processes, standards and requirements for reducing, suspending or reinstating such accounts or credit limits was inconsistent with Regulation Z and was and remains illegal.

7. Chase's post-credit reduction handling, management and administration of customer complaints, inquiries and attempted appeals are likewise unfair, unreasonable, and illegal. When a customer attempts to participate in Chase's "appeal process," Chase withholds necessary and material information, including but not limited to the actual valuation of the real property securing the HELOC at the time of the HELOC origination or most recent credit limit increase, the balance of any first mortgage at those times, the value required for reinstatement,

and/or the true present value of the property. Chase also conceals or falsely claims it is unable to disclose the method and/or the standards used to determine these values. This information is material and needed by the customer in order to determine whether an appeal should be pursued.

8. Chase's HELOC credit limit reductions and account suspensions are not only illegal; they are patently unconscionable. On October 3, 2008, Congress passed the Emergency Economic Stabilization Act of 2008, Pub. L. No. 110-343. As part of this law, Chase obtained, on information and belief, approximately $25 billion from an unprecedented $700 billion bailout funded entirely by the American taxpayers. The rationale advanced for the bailout by its proponents was that the banks needed the money to ensure liquidity in the face of the worsening subprime mortgage disaster.

9. Despite Chase's statements to Congress to the contrary, Chase has intentionally failed to meet its obligations to its customers and has intentionally deprived those customers of crucial affordable consumer credit at a critical time.

10. In stark contrast, Chase's HELOC borrowers such as Plaintiff, like most American consumers, are struggling in a faltering economy, yet they continue to meet their mortgage obligations. These customers have incurred appraisal fees, an increased price of credit, reduced credit scores, lost interest and other damages.

**Parties**

11. **Plaintiff Michael Malcolm:** Malcolm maintains his primary residence in Mountain View, California (the "subject property"). In or around March 2006, Malcolm obtained a HELOC from Chase in the amount of $122,000, secured by a mortgage on the subject property.

12. **Defendant JPMorgan Chase Bank, N.A.:** Chase is a national banking association with its main office located at 1111 Polaris Parkway, Columbus, OH 43240.

**Jurisdiction and Venue**

13. This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332(d)(2). This Complaint alleges claims on behalf of a national class of homeowners who are minimally diverse from Defendant. On information and belief, the aggregate of these claims

exceeds the sum or value of $5,000,000. This Court further has federal question subject matter jurisdiction under 28 U.S.C. § 1331 as this action arises in part under Regulation Z of TILA, 15 U.S.C. § 1647, 12 C.F.R. § 226.5(b). This Court has supplemental subject matter jurisdiction over the pendent state law claims under 28 U.S.C. § 1367.

14. Defendant Chase is a national banking association whose main offices are in Ohio, and is considered a citizen of Ohio for the purposes of diversity jurisdiction under 28 U.S.C. § 1348 and *Wachovia Bank v. Schmidt*, 546 U.S. 303 (2006).

15. Venue is also proper before this Court under 28 U.S.C. § 1391(b)(2), as a substantial part of the events, circumstances, and/or omissions giving rise to these claims occurred in this District.

16. This Court has personal jurisdiction over Defendant under Cal. Code Civ. Proc. § 410.10 because some of the acts alleged herein were committed in California (specifically in the Northern District of California), and because Defendant is registered to do business in this State and actively conducts business in this District.

**Allegations as to Plaintiff's Individual Claims**

17. In or around March 2006, Chase and Malcolm entered into a HELOC agreement under the terms of which Chase provided Malcolm a $122,000 line of credit secured by the subject property ("HELOC Agreement"). On information and belief, Chase valued the subject property at $1,000,000 at the time the HELOC was granted.

18. In or around August of 2009, Defendant mailed Malcolm a letter indicating that it had suspended Malcolm's account from future draws. The letter was undated and stated that the suspension was due to the fact that a valuation of $826,000, from an AVM, no longer supports the full amount of the credit line, and that suspension would take effect on August 7, 2009. (*See* Ex. A).

19. Following the notice, Malcolm contacted Chase's customer service representatives and requested reinstatement of his HELOC.

5

20. Chase's representatives responded by offering a so-called appeals process. As part of this process, Chase informed Malcolm that he had to order and pay for an appraisal from an appraisal service of Chase's choosing. Once the appraisal was completed, Malcolm was to send the completed appraisal and a formal request for reinstatement to Chase. In its initial notice, Chase stated that "[a]ny reinstatement of the credit line will be at our discretion...." (*See* Ex. A.)

21. Malcolm reluctantly ordered and paid for the appraisal using, as required by Chase, Chase's chosen appraisal service. The appraisal, which Malcolm forwarded on to Chase on or around August 27, 2009, showed the value of the property had *increased* from the date the HELOC had first been opened from $1,000,000 to $1,070,000. Despite the fact that its own appraisal service showed the value had actually increased, Chase has not reinstated Malcolm's HELOC.

22. Malcolm's HELOC with Chase was his primary line of credit which he used for personal household purposes. Defendant's unreasonably low valuation of Malcolm's home value and suspension of draws on Malcolm's HELOC dramatically decreased the amount of credit he had available and, on information and belief, adversely impacted Malcolm's credit score.

### Class Certification Allegations

23. Plaintiff seeks certification of a class and one subclass under both Fed. R. Civ. P. 23(b)(2) and Rule 23(b)(3).

24. **Definition of the Class and Subclass:** Pursuant to Fed. R. Civ. P. 23:

A. Plaintiff brings this Complaint against Chase on behalf of the "Class," consisting of:

> All persons in the United States who had a home equity line of credit reduced or suspended by Chase where Chase maintained, based on faulty valuation models or insignificant declines in property values that the reduction or freezing was due to a substantial decline in the value of the property securing the HELOC.

B. Plaintiff also brings this Complaint against Chase on behalf of a notice sub-class (the "Notice Subclass") consisting of:

> All Class Members in the United States who received from Chase the "Important Information About Your Home Equity Line of Credit" and "Answers to questions you may have."

6

Excluded from the Class and Notice Subclass are 1) any Judge or Magistrate presiding over this action and members of their families; 2) Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which Defendant or its parent companies have a controlling interest and their current or former employees, officers and directors; 3) persons who properly execute and file a timely request for exclusion from the Class; 4) the legal representatives, successors or assigns of any such excluded persons; and 5) HELOC account holders who have had their credit line(s) restored by Chase.

Plaintiff anticipates that amending the Class and Subclass definitions may become necessary following discovery.

25. **Numerosity:** The exact number of the members of the Class and Notice Subclass is unknown and is not available to Plaintiff, but it is clear that individual joinder is impracticable. Chase sent its generic credit line reduction letters to thousands of HELOC customers, and a substantial percentage of the recipients of these letters fall into the definition of the Class and Subclass. Class members can be easily identified through Defendant's records.

26. **Commonality:** Common questions of fact and law exist as to all members of the Class and Notice Subclass and predominate over the questions affecting only individual members. These common questions include:

(a) What were Chase's criteria for reducing the credit limits on its HELOCs;

(b) What were Chase methods for valuing the homes securing the HELOCs;

(c) Whether Chase had a sound factual basis for reducing HELOC limits based on purported significant declines in home values;

(d) Whether Chase's criteria for reducing HELOC credit limits, methods for valuing homes securing HELOCs, and ultimate reduction of HELOC limits violated Regulation Z;

(e) Whether Chase's reduction of the credit limits breached the terms of its HELOC Agreements;

(f) Whether Regulation Z and/or Chase's HELOC Agreements imposed contractual

7

obligations on Chase to have a sound factual basis before lowering HELOC limits or suspending accounts due to a purported significant decline in value of the property securing the HELOC;

(g) Whether Chase's use of AVMs to freeze accounts or reduce the credit limits on its HELOC Agreements was unfair and unlawful;

(h) Whether Chase gave lawful and fair notice to customers that their HELOCs were being reduced and the specific reasons for such reductions;

(j) Whether Chase's HELOC Agreements and policies improperly purport to allow it to reduce credit limits or freeze HELOC accounts due to insignificant declines in property values or otherwise use triggering events inconsistent with Regulation Z;

(k) Whether Plaintiff and the Class members are entitled to relief and the nature of such relief.

27. **Typicality:** Plaintiff's claims are typical of the claims of other members of the Class and the Notice Subclass, as Plaintiff and other Class members sustained damages arising out of the wrongful conduct of Defendant, based upon the same transactions which were made uniformly with Malcolm and the Class. The California and federal laws under which Plaintiff's claims arise do not conflict with the laws of any other state in any material way.

28. **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the members of the Class and Notice Subclass and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class or the Subclass and Defendant has no defenses unique to Plaintiff.

29. **Predominance and Superiority:** This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. The damages suffered by the individual members of the Class and Notice Subclass will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by the Defendant's actions. It would be virtually impossible for the individual

members of the Class to obtain effective relief from the misconduct of Defendant. Even if the members of the Class themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

30. **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class and Notice Subclass, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole. The Defendant's policies challenged herein apply and affect members of both Class and Notice Subclass uniformly, and Plaintiff's challenge of these policies hinges on Defendant's conduct, not on facts or law applicable only to Plaintiff.

**Count I: Declaratory Relief Under TILA and Regulation Z**
**(on behalf of Plaintiff and the Class)**

31. Plaintiff incorporates the above allegations by reference.

32. TILA and Regulation Z prohibit Defendant from changing any of the terms of a mortgage or HELOC Agreement, including the credit limit. 15 U.S.C. § 1647(c)(1); 12 C.F.R. § 226.5b(f)(3). There is an exception for any period in which "[t]he value of the dwelling that secures the [HELOC] declines significantly below the dwelling's appraised value" for the purpose of the plan which permits Defendant to reduce the credit limits on its HELOCs. 15 U.S.C. § 1647(c)(2)(B); 12 C.F.R. § 226.5(b)(f)(3)(vi)(A).

33. TILA and Regulation Z prohibit Chase from reducing the credit limits or freezing its HELOCs unless the values of the homes securing the credit line have actually declined significantly. "Significant decline" for purposes of 12 C.F.R. § 226.5b(f)(3)(vi)(A) has been interpreted as a decline in home value so that the initial difference between the credit limit and the available equity based on the property's appraised value for the purposes of the plan is reduced by

9

fifty percent. The Official Staff Commentary further states that Regulation Z "does not require a creditor to obtain an appraisal before suspending credit privileges [but] a significant decline must occur before suspension can occur." On August 26, 2008, the Office of Thrift Supervision issued official guidance that warned it would violate Regulation Z, for example, to "reduce the credit limits of all HELOC accounts in a geographic area in which real estate values are generally declining without assessing the value of the collateral that secures each affected HELOC account." (Emphasis in original).

34. Before reducing the limits of their customers' HELOCs, Chase had an obligation to have a sound factual basis for concluding that the value of the homes had actually declined significantly. Plaintiff alleges on information and belief that, instead, Defendant knowingly and intentionally used a variety of dubious formulas and unreliable data to manipulate the values of Chase's HELOC account holders' homes in order to justify the blanket reductions on HELOC limits. On information and belief, Defendant's valuation methodology was flawed in that Defendant or its agents, acting either in concert with Chase or under Chase's direction and control, failed to, among other acts or omissions: (1) disclose the value of the property at the origination of the HELOCs, the value necessary to reinstate the HELOCs, and the reasoning behind the use of those values; (2) validate their AVMs on a periodic basis to mitigate the potential valuation uncertainty; (3) properly document the validation's analysis, assumptions, and conclusions; (4) appropriately back-test representative samples of the valuations against market data on actual sales; (5) account fairly for improvements, property type or geographic comparables; and/or (6) take other necessary steps to reasonably verify the accuracy of the valuations.

35. Defendant violated TILA and Regulation Z by freezing Plaintiff's HELOC limit in the absence of the "significant decline" in the subject property value. The subject property has not significantly declined in value. To the contrary, Plaintiff's home has increased in value by $70,000 from the time of the HELOC origination, according to the Chase's own appraiser.

36. Chase further acted in violation of TILA and Regulation Z by requiring Plaintiff and the other Class Members to pay for appraisals upfront as part of its "appeals process." TILA

and Regulation Z provide that the burden of reinstating HELOC accounts and credit limits rests with the lender. Although lenders are permitted to push the burden of seeking reinstatement onto HELOC borrowers, TILA and Regulation Z contemplate that once a borrower requests reinstatement, the lender must then investigate the circumstances that purportedly warranted suspension. Only after the lender's investigation may the lender charge bona fide fees and appraisal costs to the borrower. Furthermore, Chase fails to take first mortgage paydowns, which increase the amount of equity available, into consideration.

37. Plaintiff and the other members of the Class have additionally been harmed because Defendant has knowingly failed to disclose information that would permit Plaintiff and the Class members to fairly determine whether to obtain an appraisal or otherwise challenge the Defendant's actions, including but not limited to:

    a. how Defendant computes the value of the properties,

    b. the actual threshold value Chase requires a customer to have an appraisal state the property is worth so that Chase will reinstate or unfreeze the HELOCs,

    c. Chase's actual and specific reasons for the reduction of the HELOCs, and

    d. other necessary and material information.

38. The Class and Defendant have adverse legal interests, and there is a substantial controversy between the Class and Defendant of sufficient immediacy and reality to warrant the issuance of a declaratory judgment as to whether Defendant's mass reduction of credit limits violates TILA and Regulation Z.

39. Plaintiff, on his own behalf and behalf of the other Class members, seeks a declaratory judgment under 27 U.S.C. § 2201 that Chase's mass reduction of HELOC credit limits in connection with their letter violates TILA and Regulation Z.

**Count II: Violation of the TILA and Regulation Z**
**(on behalf of Plaintiff and the Class against Chase)**

40. Plaintiff incorporates the above allegations by reference.

41. Chase knowingly lacked a sufficient factual basis for reducing or freezing Plaintiff's and the Class members' HELOCs. As alleged above, Chase lacked a sound factual

11

basis for concluding that the homes securing the HELOCs for Plaintiff and other Class members had declined in value so as to support reducing the credit limits or prohibiting additional extensions of credit. Chase also used improper formulas and triggering events for determining when such a "significant decline" had occurred. Further, Chase improperly pushed the burden onto its borrowers to pay for appraisals up-front, as opposed to performing its own investigation and then charging only bona fide fees so incurred.

42. Chase's reduction of the credit limit of Plaintiff's and other Class members' HELOCs violated TILA and Regulation Z.

43. Chase's violations of TILA and Regulation Z damaged Plaintiff and other Class members. These damages occurred in the form of the appraisal fees, increased price of credit, adverse effects on credit scores, loss of interest, and other damages.

44. Plaintiff, on his own behalf and behalf of other Class members, seeks actual damages under 15 U.S.C. § 1640(a)(1), statutory damages under 15 U.S.C. § 1640(a)(2) (B), and costs of the action, together with reasonable attorney's fees under 15 U.S.C. § 1640(a)(3).

**Count III: Violation of TILA and Regulation Z**
**(on behalf of Plaintiff and the Notice Subclass)**

45. Plaintiff incorporates the above allegations by reference.

46. Where a creditor prohibits additional extensions of credit or reduces the credit limit, "the creditor shall mail or deliver written notice of the action to each consumer who will be affected. The notice must be provided not later than three business days after the action is taken and shall contain specific reasons for the action." Regulation Z, 12 C.F.R. § 226.9(c)(3).

47. On information and belief, Chase provided Plaintiff and the members of the Class notices of their HELOC reductions which were untimely and/or that did not contain specific reasons for the action in violation of 12 C.F.R. § 226.9(c)(3).

48. The notices fail to provide HELOC customers with enough information to determine whether they should spend the time and resources to get an appraisal. Despite the fact that federal law requires a "significant decline in collateral value" prior to prohibiting additional extensions of credit or reducing the credit limit, the Defendant's notices are devoid of any specific

reasoning beyond that a valuation of [insert amount], based on a standard method within the industry "no longer supports the full amount of your line of credit." (*See* Ex. A). The notices do not state that the specified amount ($826,000 in Plaintiff's case) represents a "significant decline in value," how Defendant computes the value of the subject matter homes, or the threshold value a customer needs to have an appraisal show the property is worth (and Defendant's methods for computing that value) so that Chase will reinstate or lift the suspensions of the HELOCs. Instead, the notice requires customers to participate in an unfair "appeal process" wherein Defendant refuses to make clear the values needed for reinstatement and uses standards and formulas contrary to those set by Regulation Z.

49. As an actual and proximate result of Defendant's violations of TILA and Regulation Z, Plaintiff and the other Sub Class members have suspended. These damages occurred in the form of appraisal fees, increased price of credit, adverse effects on credit scores, loss of interest, and other damages. Plaintiff, on his own behalf and behalf of the other Notice Subclass members, seeks actual damages under 15 U.S.C. § 1640(a)(1), statutory damages under 15 U.S.C. § 1640(a)(2) (B), and costs of the action, together with a reasonable attorney's fee under 15 U.S.C. § 1640(a)(3).

### Count IV: Breach of Contract
### (on behalf of Plaintiff and the Class)

50. Plaintiff incorporates the above allegations by reference.

51. Plaintiff and other Class members obtained HELOCs from Chase under the terms of the HELOC Agreements. These Agreements constitute a valid contract between the Class members and Chase.

52. The HELOC Agreements contain a term that provides:

> In addition to any other rights we may have, we can suspend additional extensions of credit or reduce your Credit Limit during any period in which any of the following are in effect: (a) The value of the property declines significantly below the property's appraised value for purposes of this Credit Line Account. This includes, for example, a decline such that the initial difference between the Credit Line and the available equity is reduced by fifty percent and may include a smaller decline depending on the individual circumstances.

Defendant drafted these Agreements, which contemplate on their face triggering events that are

13

contrary to those set forth in Regulation Z.

53. Plaintiff and other Class members made all payments due to Chase and otherwise fully performed under their HELOC Agreements with Chase.

54. The credit limit under the Class members' HELOC Agreements was a material term of the contract between Class members and Chase.

55. Chase materially breached the terms of the HELOC Agreements by reducing the credit limit for Plaintiff and other Class members' HELOCs where no significant decline in value had first occurred.

56. As a result, Plaintiff and other Class members have suffered damages in the form of the appraisal fees, the increased price of credit, lost interest, attorneys' fees, adverse effects on their credit score, and other damages.

57. Plaintiff, on his own behalf and behalf of the Class members, seeks damages for Chase's breach of contract, as well as interest and attorney's fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

**Count V: Breach of Implied Covenants**
**(on behalf of Plaintiff and the Class and Subclass)**

58. Plaintiff incorporates the above allegations by reference.

59. Plaintiff and the other Class members obtained HELOCs from Chase under the terms of the HELOC Agreements. The terms of these HELOC Agreements constitute a valid contract between the Class members and Chase.

60. Implicit in the HELOC Agreements were contract provisions that prevented Chase from engaging in conduct which frustrates the Class members' rights to the benefits of the contract or which would impede the right of the Class members to enjoy the benefits of their HELOCs.

61. The credit limit was a material term of the Class members' HELOC Agreements. Chase breached the implied covenant of good faith and fair dealing in the HELOC Agreements by reducing the credit limit for Plaintiff and other Class members' HELOCs without first having a sound factual basis for claiming there was a decline in value, thereby preventing Plaintiff and the other Class Members from receiving the benefits of their contracts.

14

62. Chase further breached the implied covenant of good faith and fair dealing to the Subclass by failing to provide sufficiently specific notice and by failing to provide customers with material information regarding the calculations and values used to justify the reductions or freezes.

63. Chase further breached the implied covenant of good faith and fair dealing by pushing the burden of paying for appraisals onto the Class members up front, as opposed to, upon a request for reinstatement by the borrower, performing its own investigation and then only charging bona fide fees so incurred. Chase's shifting of the burden in this manner discourages Class members from seeking reinstatement.

64. Implicit in the HELOC agreements were contract terms that required Chase to follow Regulation Z.

65. Chase's breach of Regulation Z and the HELOC covenants caused Plaintiff and other Class members to incur damages in the form of appraisal fees, the increased price of credit, adverse effects on their credit scores, annual fees, the costs of replacement credit, loss of the benefits of their HELOC Agreements and other damages.

66. Plaintiff, on his own behalf and behalf of the other Class and Subclass members, seeks actual and consequential damages for Chase's breach of the implied covenant of good faith and fair dealing, as well as interest and attorney's fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

**Count VI: Unjust Enrichment/Restitution**
**(on behalf of Plaintiff and the Class and Subclass)**

67. Plaintiff incorporates the above allegations by reference.

68. In the alternative, and in the event this Court finds that no contract provision expressly governs the issues raised herein, Chase has knowingly received and retained benefits from Plaintiff and the Class and Subclass members under circumstances that would render it unjust to allow Chase to retain such benefits.

69. By using inaccurate and unsubstantiated valuation models, by using "triggering events" that fall outside those permitted by Regulation Z to reduce the HELOCs, and by requiring Plaintiff and members of the Class and Subclass to obtain appraisals upfront to seek reinstatement

of their HELOCs, Chase knowingly received and appreciated the benefits of up-to-date full appraisals on homes in which it has security interests under circumstances where it would be unjust for Chase not to bear the cost of the appraisals. Additionally, Chase is required to keep less cash on hand in order to cover the obligations with respect to the HELOC accounts it suspends or those on which reduces the credit limit.

70. Furthermore, by illegally freezing and reducing the HELOCs, Chase gained the time value of the money it would otherwise be potentially liable for lending out to its HELOC customers.

71. As an actual and proximate result of Chase's conduct, Plaintiff and the Class and Subclass members have incurred damages in the form of appraisal fees, annual fees, the increased price of credit, adverse effects on their credit score and other damages.

72. Plaintiff, on his own behalf and behalf of the other Class and Subclass members, seeks damages for Chase's breach of the implied covenant of good faith and fair dealing, disgorgement of all revenue and profits gained through its breach of the implied covenant of good faith and fair dealing, as well as interest and attorney's fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

### Count VII: Violation of California's UCL, Cal. Bus. & Prof. Code § 17200
**(on behalf of Plaintiff and the Class)**

73. Plaintiff incorporates the above allegations by reference.

74. Chase's reduction of the credit limit for Plaintiff and other Class members' HELOCs violated TILA and Regulation Z. With respect to the Class, Chase's conduct was deceptive and untrue as the AVMs used to determine the values of the properties securing such HELOCs were, on information and belief and as alleged above, without a sound factual basis, and inaccurate and unsubstantiated to make their use unfair, deceptive and readily subject to manipulation. Furthermore, Chase used standards and triggering events to lower credit limits when significant declines in home values had not occurred. Given all of the other allegations in this Complaint, Chase's acts alleged herein were unfair. These unlawful, deceptive, and unfair acts and practices constitute unfair competition in violation of the UCL.

16

75. Chase has engaged in unfair, unlawful and fraudulent business acts and practices as set forth above.

76. Chase violated the "unfair" prong of the UCL in that Chase's actions caused substantial injury to consumers, the injury caused by Chase's conduct is not outweighed by any countervailing benefits to consumers or competition, and the injury is one that consumers themselves could not reasonably have avoided. Chase's conduct was further unfair because it shifted the burden of seeking reinstatement to the borrowers while depriving those borrowers of critical information, including the value the appraisal would have to show in order to allow reinstatement, needed to determine whether to seek reinstatement in the first instance.

77. Chase has violated the "fraudulent" prong of the UCL in that Chase's statements to its HELOC borrowers regarding the availability of credit through the HELOCs were false and were likely to deceive a reasonable consumer. Chase's statements in its HELOC suspension letters were further fraudulent in that they misrepresent the borrowers' and Chase's legal obligations. Further, Chase's statements that any potential future reduction of credit through the HELOCs would only occur through a substantial decline in value were false and were likely to deceive a reasonable consumer.

78. Chase has violated the "unlawful" prong of the UCL in that Chase's conduct was undertaken in violation of TILA and Regulation Z.

79. Chase's violations of the UCL caused Plaintiff and the Class members to pay money to Chase in the form of fees, lost interest, opportunity, adversely impacted credit and other damages.

80. As a direct and proximate result of Chase's systematically unlawful credit reductions and account suspensions, Plaintiff and the Class members have suffered adverse effects on their credit scores, annual fees, as well as attorneys' fees and other damages.

81. Plaintiff, on his own behalf and behalf of other Class members, seeks an order preliminarily and permanently enjoining Chase's unfair competition alleged herein and requiring Chase to restore HELOC limits and cease freezing HELOCs in violation of Regulation Z, and

17

individual restitution of property gained by such unfair competition under the UCL (Cal. Bus. & Prof. Code § 17203), as well as interest and attorney's fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

### Count VIII: Violation of California's UCL, Cal. Bus. & Prof. Code § 17200
### (on behalf of Plaintiff and the Notice Subclass)

82. Plaintiff incorporates the above allegations by reference.

83. Chase's form letter, customer service experience, and "appeals process" lack necessary details and information, including the specific reasoning for suspending or reducing the HELOC limits and sufficient information, including the amount required for reinstatement, to allow customers to determine whether they should appeal.

84. Chase has engaged in unfair, unlawful and fraudulent business acts and practices as set forth above.

85. Defendant has violated the "unfair" prong of the UCL in that Chase's actions caused substantial injury to consumers, and such injury is not outweighed by any countervailing benefits to consumers or competition, and the injury is one that consumers themselves could not reasonably have avoided.

86. Chase has violated the "fraudulent" prong of the UCL in that Chase's statements regarding the availability of credit through the HELOCs were false and were likely to deceive a reasonable consumer.

87. Defendant has violated the "unlawful" prong of the UCL in that Defendant's notice was undertaken in violation of TILA and Regulation Z.

88. Plaintiff, on his own behalf and behalf of the other Notice Subclass members, seeks an order preliminarily and permanently enjoining Defendant's unfair competition alleged herein, and requiring Defendant to restore HELOCs and cease freezing HELOCs in violation of Regulation Z, and individual restitution of property gained by such unfair competition under the UCL (Cal. Bus. & Prof. Code § 17203), as well as interest and attorney's fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment and orders in his favor and against Defendant as follows:

(a) Certifying the action as a class action and designating Plaintiff and his counsel as representatives of the Class and Subclass;

(b) Declaratory judgment under 27 U.S.C. § 2201 on Count I that the Defendant's HELOCs reductions violate federal law;

(c) Statutory damages under 15 U.S.C. § 1640(a)(2)(B) for Count II;

(d) Actual damages for the Subclass on Counts III, V, VI and VIII, including but not limited to appraisal fees, the increased price of credit, NSF fees, attorney's fees, interest and other damages in an amount to be proved at trial;

(e) Actual damages on Counts II, IV, V, VI and VII for the Class including but not limited to appraisal fees, the increased price of credit, NSF fees, attorney's fees, interest and other damages in an amount to be proved at trial;

(f) Preliminary and permanent equitable and injunctive relief for the Class, including enjoining Defendant from further violations of Regulation Z and restoration of HELOC credit limits, including restitution of property gained by the unfair competition alleged herein, and an order for accounting of such property;

(g) Preliminary and permanent equitable and injunctive relief for the Subclass, including enjoining Defendant from further violations of Regulation Z, and restoration of HELOC limits, restitution of property gained by the unfair competition alleged herein, and an order for accounting of such property;

(h) Awarding pre- and post-judgment interest; and

(i) Granting such other and further relief as the Court may deem just and proper

## JURY TRIAL DEMAND

The Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: September 24, 2009

By:

\_\_\_/s/\_ Alan Himmelfarb
Alan Himmelfarb (Cal. Bar. No. 90480)
KAMBEREDELSON, LLC
2757 Leonis Blvd.
Los Angeles, CA 90058
(323) 585-8696
ahimmelfarb@kamberedelson.com

Jay Edelson (*pro hac vice* pending)
Steven Lezell (*pro hac vice* pending)
KAMBEREDELSON, LLC
350 N. LaSalle, Suite 1300
Chicago, Illinois 60654
(312) 589-6370